UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WILLIAM USCHOLD, et al., | Case No. 17-cv-04424-JSW |
| Plaintiffs, | |
| v. | **ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION FOR CLASS CERTIFICATION** |
| CARRIAGE SERVICES, INC., | |
| Defendant. | Re: Dkt. Nos. 76, 81 |

Now before the Court are plaintiffs William Uschold, Jose Almendarez, Ton Saechao, and Tiana Naples's (collectively, "Plaintiffs") motions for summary judgment and class certification. The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motions suitable for disposition without oral argument. *See* Civil L.R. 7-1(b). For the reasons set forth below, the Court HEREBY DENIES Plaintiffs' motions for summary judgment and for class certification.

**BACKGROUND**

CSI provides funeral and cemetery services and merchandise. (Dkt. No. 121 (Declaration of Paul Elliot ("Elliott Decl.")) ¶ 3.) During the relevant time period, CSI operated thirty-four business locations in California, including a location in Rolling Hills. (*Id.*) Each of the four Plaintiffs were, at one time, employees of defendant Carriage Services, Inc. ("CSI").

Mr. Uschold worked for CSI from 2012 to 2017, when he was terminated. (Dkt. No. 115-2[1] (December 2018 Deposition of William Uschold ("December 2018 Uschold Dep.")) p. 125.)

---

[1] The Court cites to deposition excerpts submitted by Plaintiffs and CSI. Accordingly, some cites to deposition transcripts for particular witnesses will hail from multiple docket numbers. For example, excerpts from Mr. Uschold's deposition transcripts submitted in support of and in opposition to Plaintiffs' motion for summary judgment may be found as exhibits to Dkt. Nos. 77,

United States District Court
Northern District of California

He started as an advanced planning counselor ("APC"), was shortly thereafter promoted to supervise other employees, and was ultimately promoted to advanced planning manager ("APM"). (*Id.* p. 59, 69-71, 84-86; Dkt. 76-1 (Declaration of William Uschold ("Uschold Decl.")) ¶¶ 2, 4.) As an APM, Mr. Uschold supervised Mr. Almendarez, Mr. Saechaeo, and Ms. Naples.  (Dkt. No. 115-3 (December 2018 Deposition of Jose Almendarez ("December 2018 Almendarez Dep.")) p. 52; Dkt. No. 115-4 (December 2018 Deposition of Ton Saechao ("December 2018 Saechao Dep.")) p. 41, 58; Dkt. No. 115-5 (December 2018 Deposition of Tiana Naples ("December 2018 Naples Dep.")) p. 21.)

Mr. Almendarez worked for CSI beginning in February of 2012.  (Dkt. No. 115-3 (December 2018 Almendarez Dep.) p. 40 and Exhibit 7.)  He began work as an APC and was later promoted to Unit Leader.  (*Id.* p. 42.)  Mr. Saechao began working for CSI in March of 2013. (Dkt. No. 115-4 (December 2018 Saechao Dep.) p. 34 and Exhibit 3.)  He began as an APC and was also promoted to Unit Leader.  (*Id.* p. 35, 46.)  Ms. Naples began working for CSI in 2015. (Dkt. No. 115-5 (December 2018 Naples Dep.) p. 21 and Exhibit 11.)  She was later promoted to assistant team leader and then to team lead.  (*Id.* p. 19, 21, 28, 34.)  Each of these three Plaintiffs resigned in 2017.  (Dkt. No. 115-3 (December 2018 Almendarez Dep.) p. 85 and Exhibit 8; Dkt. No. 115-4 (December 2018 Saechao Dep.) p. 72 and Exhibit 7; Dkt. No. 115-5 (December 2018 Naples Dep.) p. 43-44 and Exhibit 4.)

Shortly after Mr. Uschold's termination and the resignation of the three other Plaintiffs, Plaintiffs filed the above-captioned lawsuit, alleging violations of California Labor Code and California's Unfair Competition Law based on CSI's purported failure to reimburse each Plaintiff for expenses each incurred while working for CSI.  Plaintiffs now move for summary judgment on both claims based on CSI's alleged failure to reimburse Plaintiffs for the cell phone and personal vehicle expenses incurred in the course of performing their positions at CSI.  Plaintiffs seek to certify a class consisting of:

> All former and current sales employees ("Class Members") employed
> by Defendants within the State of California within four years of the

115, and 124-1.

United States District Court
Northern District of California

filing of this Complaint until the entry of judgment after trial, that were not reimbursed for reasonable and necessary expenses incurred in relationship to the use of personal property while performing their job duties as required by California Labor Code Section 2802. ("The Class")

Plaintiffs also seek to certify two subclasses consisting of:

> (1) all Class Members that were not reimbursed for the use of their personal cell phone as required by California law ("Cell phone sub-class"); and
> (2) all Class Members that were not reimbursed for use of their personal vehicles as required by California law; specifically gas and mileage ("Vehicle sub-class").

The Court will discuss additional facts as necessary below.

## ANALYSIS

**A.     Summary Judgment.**

**1.     Evidentiary Objections.**

CSI objects to several pieces of evidence Plaintiffs submitted in support of their motion for summary judgment. For the reasons explained below, the Court overrules each of CSI's objections.

First, CSI objects to five exhibits consisting of deposition transcript excerpts—*see* Dkt. Nos. 77-1, 77-2, 77-3, 77-4, and 77-5—because Plaintiffs failed to include signed certifications from the court reporter for each transcript excerpt. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (citing Fed. R. Evid. 901(b); Fed. R. Civ. P. 56(e), 30(f)(1)) (observing that, at summary judgment, a deposition excerpt is authenticated when it identifies the deponent's name and the action and includes a court reporter's certification)). The Court is not persuaded by Plaintiffs' arguments that an attorney affidavit alone is sufficient to authenticate a deposition transcript. In fact, the Ninth Circuit has reached the exact opposite conclusion. *See id.* (holding counsel affidavit insufficient to authenticate deposition transcript[2], "even if the affiant-counsel were present at the deposition"). Nonetheless, Plaintiffs attached the pertinent reporter's certificates to deposition transcript excerpts submitted in support of their reply brief. *Semaan v.*

---

[2] The Court recognizes the tension between this holding and the Local Rules for the Northern District. *See* Civil L.R. 7-5(a) (noting affidavit or declaration required to authenticate exhibits, including deposition transcripts).

1    *IGT*, 126 Fed. App'x 794, 795 (9th Cir. 1005) (citation omitted) (finding party cured initial failure

2    to verify exhibits).  CSI's objection to these exhibits is therefore moot.  Moreover, as discussed

3    more fully below, CSI does not actually argue that these exhibits and others are not what they

4    purport to be.  Fed. R. Evid. 901(a).

5         CSI next argues that the Court should not consider an exhibit consisting of CSI's responses

6    to Mr. Almendarez's special interrogatories.  (*See* Dkt. No. 77-6.)  Plaintiffs neglected to include

7    CSI's signature page in this exhibit, and, therefore, CSI contends the document is unverified and

8    inappropriate for consideration at summary judgment.

9         Responses to interrogatories must be verified by the responding party's signature.  Fed. R.

10   Civ. P. 33(b)(5).  This rule governs the responding party's obligation when serving answers to the

11   propounding party and is designed to ensure the responses are accurate under penalty of perjury.

12   For this reason, a discovery response that was in fact unverified (in other words, unsigned as

13   served on the propounding party) would generally not be admissible at summary judgment.  *See*

14   *Blevins v. Marin*, No. 11-cv-03475-KJN, 2013 WL 5718869, at *1-2 (E.D. Cal. Oct. 11, 2013)

15   ("[A]ll responses to interrogatories and requests for admission must be verified—that is, bear

16   plaintiff's signature attesting under penalty of perjury that his responses are true and correct—in

17   order to be an admissible form at summary judgment or trial.").

18        Yet, apart from bemoaning the exhibit's lack of a signature page, CSI does not attack the

19   integrity of the document itself.  CSI does not, for example, contend that it served unverified

20   discovery responses on Plaintiffs.  (This would be an odd, self-defeating contention indeed.)  CSI

21   also does not contend that the copy of its interrogatory responses Plaintiffs filed as an exhibit is an

22   inaccurate copy of the responses it actually served.  To the extent CSI is attempting to argue the

23   interrogatory responses are not properly authenticated, the Court disagrees.  Attorney Allyssa

24   Villanueva affirmed in her declaration that the document attached to her declaration was a "true

25   and correct" copy of CSI's interrogatory responses.  (Dkt. No. 77 ¶ 7.)  The exhibit, therefore, is

26   adequately authenticated.  *See* Civil L.R. 7-5(a). Accordingly, the Court overrules CSI's objection

27   to this exhibit.

28        CSI next attacks exhibits containing the named Plaintiffs' responses to CSI's

United States District Court
Northern District of California

1   interrogatories.  (*See* Dkt. Nos. 77-7, 77-8, 78, 78-1.)  CSI argues that the Court should not allow

2   Plaintiffs to rely on their own written discovery responses as evidence and notes that none of these

3   discovery responses were submitted to the Court with verifications.[3]

4          As with CSI's objection to Plaintiffs' submission of CSI's interrogatory responses, CSI

5   does not suggest that the interrogatory responses were not verified when served or that these

6   interrogatory responses are not the same responses Plaintiffs served on it.  Accordingly, while the

7   Court is at a loss as to why Plaintiffs' counsel would omit verifications from these and other

8   exhibits, the form of the exhibits alone does not warrant their exclusion from consideration at

9   summary judgment.  *Cf. Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (holding facts

10  underlying affidavit are of the type that would be admissible as evidence even if affidavit itself not

11  admissible).

12         CSI's other argument, with respect to Plaintiffs' answers to CSI's interrogatories, is that

13  Plaintiff's answers are inappropriate evidence for summary judgment because they are "self-

14  serving."  This objection is nonsensical: all evidence submitted in support of a party's case is, to a

15  degree, self-serving.  *See United States v. Shumway,* 199 F.3d 1093, 1103–04 (9th Cir. 1999)

16  (noting that any affidavit of a party worth submitting is "self-serving"). Moreover, in the Ninth

17  Circuit, self-serving statements may be admissible at summary judgment "so long as they state

18  facts based on personal knowledge and are not too conclusory."  *See Rodriguez v. Airborne*

19  *Express*, 265 F.3d 890, 902 (9th Cir. 2001); *see, e.g., Griffin v. Johnson*, No. 13-cv-1599-LJO-

20  BAM, 2017 WL 4012817, at *2 (E.D. Cal. Sept. 11, 2017), *report and recommendation adopted,*

21  No. 13-cv-1599-LGO-BAM, 2017 WL 5070261 (E.D. Cal. Nov. 3, 2017).  CSI has not identified

22  specific passages of Plaintiffs' interrogatory responses it contends are conclusory or not based on

23  personal knowledge.  *Cf. Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 310 F. Supp.

24  3d 1089, 1107 (S.D. Cal. 2018) (citations omitted) (overruling evidentiary objections that fail to

25  address specific pieces of evidence).  Accordingly, the Court overrules CSI's objections to

---

[3] Indeed, Mr. Uschold's and Ms. Naples's responses to CSI's interrogatories contain no signature page at all, while Mr. Almendarez's and Mr. Saechao's responses to CSI's interrogatories contain only signatures from Attorney Benjamin.  *See* Fed. R. Civ. P. 33(b)(5) (requiring both person providing answers and attorney posing objections to sign interrogatory responses).

United States District Court
Northern District of California

1    Plaintiffs' interrogatory responses.

2         Finally, CSI argues that numerous exhibits, specifically Mr. Uschold's declaration and

3    passages from deposition transcripts, contain inadmissible hearsay.  CSI further contends that

4    certain of Plaintiffs' exhibits lack foundation.  (*See* 76-1, 77-1, 77-2, 77-3, 77-4.)  At summary

5    judgment, such objections are not well-taken.  Rule 56 requires only that evidence *would* be

6    admissible at trial, not that it "presently" is admissible.  *See Comite de Jornaleros de Redondo*

7    *Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011) ("Rule 56 is precisely

8    worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at

9    trial.").  Indeed, courts in the Ninth Circuit have observed that objections based on lack of

10   foundation, speculation, hearsay, and relevance are "duplicative of the summary judgment

11   standard itself."  *See All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12-cv-146-BLM,

12   2014 WL 1286561, at *16–17 (S.D. Cal. Mar. 31, 2014) (citing *Burch v. Regents of the Univ. of*

13   *Cal.*, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006) and *Rose v. J.P. Morgan Chase, N.A.,* No.

14   12–cv-225-WBS-CMK, 2014 WL 546584, *3 (E.D. Cal. 2014) (overruling objections based on

15   relevance, lack of foundation, and undue prejudice as superfluous)).  CSI has not shown that

16   Plaintiffs will be unable to introduce the information it has identified as hearsay in an acceptable

17   format at trial.  And, for that matter, CSI has not shown that Plaintiffs will be unable to lay a

18   foundation for their evidence at trial.  Accordingly, the Court overrules these evidentiary

19   objections.

20        Most of CSI's evidentiary objections point to bizarre technical deficiencies in Plaintiffs'

21   exhibits.  While these deficiencies might very well warrant exclusion at trial, at summary

22   judgment, the court's key object is weighing the merits of the case and, in doing so, the court must

23   focus its attention on the admissibility of the evidence's *contents* and not its form.  *Fonseca v.*

24   *Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).  It is generally not appropriate

25   at summary judgment to award a decision based on technicalities alone: "Summary judgment is

26   not a game of 'Gotcha!' in which missteps by the non-movant's counsel, rather the merits of the

27   case, can dictate the outcome."  *Burch*, 433 F. Supp. at 1120 (E.D. Cal. 2006).  If the underlying

28   information contained in a piece of evidence is the kind of information that would be admissible at

United States District Court
Northern District of California

6

1    trial, a court should consider that evidence at summary judgment.  *See Block v. City of Los*

2    *Angeles,* 253 F.3d 410, 418–19 (9th Cir. 2001) (observing, at summary judgment, party need not

3    produce evidence in admissible form).  The underlying information in Plaintiffs' contested

4    exhibits is the type of information that would be admissible at trial.  For all of these reasons, the

5    Court overrules all of CSI's objections.

6         **2.      Applicable Legal Standards.**

7         Summary judgment is proper "if the movant shows that there is no genuine dispute as to

8    any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

9    An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find

10   for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986).  A fact

11   is "material" if it might affect the outcome of the case.  *Id.* at 248.

12        The party moving for summary judgment bears the initial burden of identifying those

13   portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue

14   of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P.

15   56(c).  Once the moving party has met its burden, the burden shifts to the non-moving party to

16   "designate specific facts showing a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  If the non-

17   moving party fails to point to evidence precluding summary judgment, the moving party is then

18   entitled to judgment as a matter of law.  *Id.* at 323.  A mere "scintilla of evidence" is not enough;

19   there must be evidence upon which the jury could "reasonably find for the non-moving party."

20   *Anderson*, 477 U.S. at 252.

21        When evaluating a motion for summary judgment, a court must view evidence in the light

22   "most favorable to the non-moving party" and "draw all justifiable inferences in its favor."  *Id.* at

23   255.  At summary judgment, a court may not make credibility determinations or ascribe weight to

24   evidence.  *Id.*  While a court may consider all materials in the record, it need only consider the

25   materials the parties cite: a court is not obligated to scour the record in search of a disputed issue

26   of fact.  *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined*

27   *Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also* Fed. R. Civ. P. 56(c)(3).

28        //

United States District Court
Northern District of California

### 3.      California Labor Code Section 2802.

California Labor Code section 2802 provides, in relevant part, that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802.  To make a claim under section 2802, a plaintiff must show: (i) the employee made expenditures or incurred losses; (ii) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties or in obedience to the employer's directions; and (iii) the expenditures or losses were both reasonable and necessary.  *Swamy v. Title Source, Inc.*, No. 17-cv-1175-WHA, 2018 WL 1586139, at *3 (N.D. Cal. Apr. 2, 2018).  Further, the employer must know or have reason to know the employee incurred the expense.  *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009).  Whether an expense is "necessary" is ordinarily a question of fact.  *Morse v. ServiceMaster Glob. Holdings Inc.*, No. 10-cv-628-SI, 2011 WL 2470252, at *5 (N.D. Cal. June 21, 2011) (citations and quotation omitted).  However, necessity may be determined as a question of law when there are no disputes of material facts and there is no possibility of conflicting inferences.  *Id.*

Plaintiffs move for summary judgment on the issue of whether they are entitled to reimbursements for cell phone and travel expenses under section 2802.  CSI argues that Plaintiffs have not met their burden to show there is no dispute of fact (i) that each Plaintiff incurred expenditures, (ii) that such expenses were necessary, or (iii) that CSI knew or should have known Plaintiffs were incurring such expenses and not receiving reimbursement.

### a.      Incurred Expenditures in Discharge of Job Duties.

First, there is a genuine dispute of fact as to whether Plaintiffs incurred expenses.  Plaintiffs have testified that they each used their cell phones and personal vehicles in discharge of their job duties.  (*E.g.*, Dkt. No. 77-1 (December 2018 Uschold Dep.) p. 96, 131-32; Dkt. No. 77-2 (December 2018 Almendarez Dep.) p. 107-08; Dkt. No. 77-3 (December 2018 Saechao Dep.) p. 36-38; Dkt. No. 77-4 (December 2018 Naples Dep.) p. 112.).  Plaintiffs have also testified that the nature of each of their jobs required searching for potential clients, or "prospecting."  Prospecting,

according to Plaintiffs' testimony, required using their personal cell phones[4] to contact customers and using their personal vehicles to drive from their office to personally visit customers or to set up booths at public locations in order to attract interest.  (*E.g.*, Dkt. No. 77-1 (December 2018 Uschold Dep.) p. 59, 62-64, 66; Dkt. No. 77-2 (December 2018 Almendarez Dep.) p. 40; Dkt. No. 77-4 (December 2018 Naples Dep.) p. 19-20.)

Meanwhile, CSI has adduced evidence that suggests at least some of the Plaintiffs did not incur reimbursable expenses.  For example, CSI has pointed to Mr. Uschold's and Mr. Almendarez's tax returns, noting that, while each claimed substantial deductions for expenses incurred for side jobs each worked while being employed at CSI, neither claimed deductions for expenses incurred due to their employment at CSI.  (Dkt. No. 115-2 (December 2018 Uschold Dep.) p. 240 and Exhibit 30; Dkt. No. 115-8 (March 2019 Deposition of Jose Almendarez ("March 2019 Almendarez Dep.")) p. 57-58, 62-65 and Exhibits 21 and 22; Dkt. No. 115-9 (April 2019 Deposition of William Uschold ("April 2019 Uschold Dep.")) p. 292-93, 301, 318-22.) Further, when asked about one of his phone bills at his deposition, Mr. Saechao was unable to parse out which phone calls were for CSI and which were personal.  (Dkt. No. 115-6 (March 2019 Saechao Dep.) p. 189-90, 198, 207-09 and Exhibit B.)

CSI introduced evidence that Ms. Uschold submitted reimbursement forms and was reimbursed for a host of expenses incurred in the course of his job duties.  (Dkt. No. 115-2 (December 2018 Uschold Dep.) p. 198, 203 and Exhibits 17 and 22; Dkt. No. 122 (Declaration of Teresa Marquez ("Marquez Decl.")) ¶ 15 and Exhibit B.)  CSI also introduced evidence that Mr. Uschold approved reimbursement requests submitted by his subordinates using the CSI reimbursement forms.  (Dkt. No. 115-2 (December 2018 Uschold Dep.) p. 198, 203 and Exhibit 22; Dkt. No. 122 (Marquez Decl.) Exhibit B.)  CSI's reimbursement form contains specific sections for reimbursements related to non-commuting travel expenses and cell phone use.  (*See, e.g.*, Dkt. No. 115-2 (December 2018 Uschold Dep.) Exhibits 17 and 22.)  Yet, despite what appears to be frequent use of this form, Mr. Uschold testified that he was unfamiliar with portions

---

[4] Plaintiffs testified that the office from which they worked had landlines but not enough for the employees on staff.  (Dkt. No. 77-1 (December 2018 Uschold Dep.) p. 99.)

United States District Court
Northern District of California

1    of the form that enabled him to request reimbursement for the two categories of expenses at issue

2    on summary judgment.  (*Id.* p. 169.)  Plaintiffs have not provided a satisfactory explanation to

3    reconcile Mr. Uschold's testimony with his exposure to the reimbursement form.

4            This evidence demonstrates a dispute of material fact as to whether Plaintiffs incurred

5    expenses for which they were not reimbursed.

6            Finally, CSI has asked this Court to take judicial notice of a plea agreement and a

7    judgment, demonstrating that Ms. Naples was convicted in 2016 for conspiracy to submit false

8    claims, in violation of 18 U.S.C. § 286.  (*See* Dkt. No. 116 and exhibits.)  A court "must take

9    judicial notice if a party requests it and the court is supplied with the necessary information."  Fed.

10   R. Evid. 201(c)(2).  A district court may take judicial notice of facts not subject to reasonable

11   dispute and "generally known" in the community or "capable of accurate and ready determination

12   by reference to sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b).

13   The documents CSI provided meet the criteria for judicial notice; therefore, the Court grants CSI's

14   request.  *See Lopez v. Garcia Apartments, LLC*, No. 14-cv-3315-AB-PLA, 2014 WL 12696710, at

15   *3 (C.D. Cal. Nov. 3, 2014) (taking judicial notice of prior criminal conviction but finding

16   information irrelevant and unduly prejudicial). !!

17           The Court disagrees with Plaintiffs' argument that Ms. Naples's prior conviction is

18   irrelevant and that any probative value is outweighed by substantial prejudice.  Prior crimes of

19   dishonesty are relevant insofar as evidence of the same is helpful for impeachment.  *See* Fed. R.

20   Evid. 609(a).  Moreover, a conviction for conspiracy to file false claims is a crime that requires a

21   dishonest act or a false statement.  Under Rule 609(a)(2), which addresses using prior convictions

22   for crimes of dishonesty to impeach, the Court does not have discretion to exclude such evidence

23   under Rule 403.  *See id.*  CSI's use of Ms. Naples's prior conviction to raise doubt about her

24   credibility is entirely appropriate, even at summary judgment.  *See Gemmel v. Systemhouse, Inc.*,

25   No. 04-cv-198-TUC-CKJ, 2009 WL 3157262, at *7 (D. Ariz. Sept. 28, 2009) (noting, at summary

26   judgment, that prior conviction of plaintiff raises credibility questions about her testimony).  The

27   Court, therefore, will consider Ms. Naples's prior conviction in its analysis.

28           Plaintiffs argue that credibility determinations are inappropriate at summary judgment.

1    While it is true that a court may not make an affirmative determination of credibility on summary

2    judgment, it is entirely appropriate for a court to decline to grant summary where there are

3    questions about witness credibility.  *Anderson*, 477 U.S. at 255 (credibility determinations and

4    weight of evidence are jury issues); *S.E.C. v. M*A W., Inc.*, 538 F.3d 1043, 1054-55 (9th Cir.

5    2008) (no summary judgment where credibility at issue); *see Gemmel*, 2009 WL 3157262, at *7

6    (denying summary judgment after non-moving party raised credibility concerns regarding

7    plaintiff's testimony).  Attacking credibility attacks the sufficiency of the moving party's

8    evidence, which is the duty of the non-moving party at summary judgment.

9           Plaintiff-witness credibility is especially important here because Plaintiffs have not

10   corroborated their testimony regarding incurred expenses with receipts, invoices, or any other

11   documentation.  *See also Manley v. Rowley*, 847 F.3d 705, 710–11 (9th Cir. 2017) (holding

12   uncorroborated statement cannot create a genuine dispute of material fact); *see also In re

13   Mirikitani*, No. 05-cv-03693, 2016 WL 7367760, at *4 (Bankr. D. Haw. Dec. 19, 2016)

14   (discussing "self-serving" and "uncorroborated" testimony in the context of both supporting and

15   defeating motion for summary judgment), *adopted sub nom. Field v. Mirikitani*, No. 16-cv-00121

16   LEK-RLP, 2017 WL 980558 (D. Haw. Mar. 14, 2017).  The absence of corroborating evidence

17   puts CSI in a difficult position.  On the one hand, CSI must introduce evidence to dispute

18   Plaintiffs' testimony about incurring expenses that were never reimbursed.  On the other hand,

19   proving a negative (here, proving that Plaintiffs did not incur expenses that were never

20   reimbursed) is nearly impossible.  *See United States v. Fei Lin*, 139 F.3d 1303, 1308 (9th Cir.

21   1998) (citation omitted) (noting "difficulties inherent in requiring [a party] to prove a negative").

22          Whether Plaintiffs' testimony—Plaintiffs' sole evidence that they incurred expenses CSI

23   did not reimburse—is trustworthy is a question for a jury, not for this Court.  *See Marr v. Bank of

24   Am.*, No. 09-cv-05978, 2011 WL 845914, at *1 (N.D. Cal. Mar. 8, 2011) (denying summary

25   judgment for section 2802 claim where evidence submitted by plaintiff regarding expenses was

26   uncorroborated).  Making all reasonable inferences in favor of CSI, as the Court must, Plaintiffs'

27   evidence is not strong enough to negate a genuine dispute of fact.  CSI has shown there is a

28   dispute of material fact with respect to whether Plaintiffs incurred unreimbursed expenses in the

United States District Court
Northern District of California

11

1  course of their job duties.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.

2  2002) (observing court must draw all reasonable inferences in favor of non-moving party).

3              **b.      Necessity of Incurred Expenses.**

4              Under section 2802, "necessary expenditures" means "all reasonable costs, including but

5  not limited to, attorney's fees incurred by the employee enforcing the rights granted by this

6  section."  § 2802(c).  A necessary expense is one that is "reasonable under the circumstances."

7  *Grissom v. Vons Cos., Inc.*, 1 Cal. App. 4th 52, 58 (1991).  Necessity, in the context of a section

8  2802 claim, is an inherently fact-specific question.  *Id.*

9              Plaintiffs have testified that they could not have performed their jobs without using their

10  personal cell phones (or, at least cell phones CSI did not issue) and without using personal

11  vehicles.  Specifically, Plaintiffs have testified that the CSI office from which they worked did not

12  have enough landlines for sales staff and that Plaintiffs needed to field sales calls outside of

13  business hours or when they were working off-site.  (Dkt. No. 76-1 (Uschold Decl.) ¶¶ 5, 6; Dkt.

14  No. 77-1 (December 2018 Uschold Dep.) p. 99; Dkt. No. 77-2 (December 2018 Almendarez Dep.)

15  p. 130-32 (available landlines did not function properly); Dkt. No. 77-3 (December 2018 Saechao

16  Dep.) p. 38-39, 43; Dkt. No. 77-4 (December 2018 Naples Dep.) p. 40.)  Plaintiffs also testified

17  that they needed vehicles to travel from their office to make personal sales calls and to travel to

18  public-facing spaces to set up booths and that they were not allowed to use CSI vehicles.  (Dkt.

19  No. 76-1 (Uschold Decl.) ¶¶ 5, 8, 10; Dkt. No. 77-1 (December 2018 Uschold Dep.) p. 133-34,

20  257-58; Dkt. No. 77-2 (December 2018 Almendarez Dep.) p. 42, 104-05, 108-11; Dkt. No. 77-3

21  (December 2018 Saechao Dep.) p. 35, 94-95, 100; Dkt. No. 77-4 (December 2018 Naples Dep.)

22  37-38, 45, 83-84, 89.)  Plaintiffs also produced evidence they were required to put their personal

23  cell phone numbers on business cards.  (*E.g.*, Dkt. No. 76-1 (Uschold Decl.) ¶ 6.)

24              CSI points to evidence that suggests at least some APCs were able to perform their job

25  duties without a cell phone and to evidence that suggests the location where Plaintiffs worked had

26  sufficient landlines to meet employee usage needs.  (Dkt. No. 122 (Marquez Decl.) ¶¶ 8, 9; Dkt.

27  No. 120 (Declaration of John Banas ("Banas Decl.")) ¶ 4; Dkt. No. 119 (Declaration of Richard

28  Davis ("Davis Decl.")) ¶ 15; Dkt. No. 115-7 (March 2019 Naples Dep.) p. 74.)  CSI contends that

United States District Court
Northern District of California

United States District Court
Northern District of California

1    it was possible for employees to fulfill their sales duties entirely by phone.  (Dkt. No. 121 (Elliott

2    Decl.) ¶ 7.)  CSI has submitted evidence that placing a cell phone number on a business card was

3    voluntary and that sales staff had to affirmatively request to add this information to a CSI business

4    card.  (Dkt. No. 122 (Marquez Decl.) ¶ 10.)  CSI also adduced evidence that employees were not

5    required to own vehicles to be hired for sales positions and that employees were able to use

6    company vehicles to travel from the office for work purposes.  (*Id.* ¶¶ 8, 9, 11.)  CSI also contends

7    that, under its de-centralized corporate management structure, the extent to which an employee

8    was required to leave campus in order to fulfill sales duties was at the sole discretion of local

9    management.  (*E.g.*, Dkt. No. 119 (Davis Decl.) ¶¶ 3, 6.)

10          Determining whether an expense was necessary, particularly in light of CSI's contradictory

11   evidence, would require the court to examine the specific facts of the expenses and the

12   circumstances giving rise to them.  *See Nguyen v. Wells Fargo Bank*, No. 15-cv-05239-JCS, 2016

13   WL 5390245, at *9 (N.D. Cal. Sept. 26, 2016) (observing that, in the absence of policies requiring

14   expenditures, question of whether an expense was "necessary" requires inquiry concerning

15   specific facts of plaintiff's circumstances).  Accordingly, Plaintiffs do not demonstrate an absence

16   of material fact regarding whether these expenses were necessary.

17                   **c.      Knowledge.**

18          Finally, there is a dispute of material fact as to whether CSI knew or should have known

19   Plaintiffs were not being reimbursed for incurred expenses.  The parties do not appear to dispute

20   whether CSI anticipated employees *might* incur expenses related to their personal vehicles or cell

21   phones.  CSI's policies allow for reimbursement for precisely these types of contested outlays:

22   CSI's employee handbook explains that employees may be reimbursed for cell phone and personal

23   vehicle expenses and CSI's reimbursement form has two subsections specifically for these

24   categories.  (Dkt. No. 115-2 (March 2018 Uschold Dep.) Exhibit 9; Dkt. No. 122 (Marquez Decl.)

25   Exhibit A.)  Further, CSI has also testified that the expenses Plaintiffs claimed to incur are of the

26   type for which CSI would reimburse employees.  (Dkt. No. 77-5 (Deposition of Paul Elliott

27   ("Elliott Dep.") p. 40.)

28          Yet, drawing all inferences in favor of CSI, as this Court must, there is a reasonable

United States District Court
Northern District of California

1    dispute as to whether CSI knew or should have known Plaintiffs were incurring expenses but not

2    being reimbursed.  CSI has maintained it never refused reimbursement requests from Plaintiffs,

3    and CSI testified that, had Plaintiffs submitted requests, it would have reimbursed them.  (Dkt. No.

4    119 (Davis Decl.) ¶ 9, 18; Dkt. No. 120 (Banas Decl.) ¶ 7; Dkt. No. 121 (Elliott Decl.) ¶ 10, 11; Dkt.

5    No. 122 (Marquez Decl.) ¶ 14.)  Mr. Uschold also testified that he would have no reason to think

6    CSI would not reimburse such requests.[5]  (Dkt. No. 115-2 (March 2018 Uschold Dep.) p. 168,

7    198.)

8         CSI has argued that, due to its liberal reimbursement policy and the frequency with which

9    employees[6] submitted reimbursement forms, it had no reason to suspect Plaintiffs or other

10   employees were incurring expenses and not being reimbursed.  To be clear, an employee's failure

11   to submit a reimbursement form does not waive his or her rights under section 2802: when an

12   employer "has reason to know" that an employee has incurred an expense, the employer must

13   exercise due diligence to ensure the employee is repaid.  *Stuart*, 641 F. Supp. 2d at 904.  Yet,

14   Plaintiffs have presented no undisputed evidence to suggest that CSI had reason to know Plaintiffs

15   were bearing its costs of doing business without being reimbursed.

16        Plaintiffs have not shown they are entitled to summary judgment on their section 2802

17   claim.

18        **4.    California Unfair Competition Law.**

19        Plaintiffs also move for summary judgment on their unfair competition law claim under

20   California Business and Professions Code section 17200.  Plaintiffs' claim under section 17200 is

21   dependent upon Plaintiffs' proving a violation of California Labor Code.  For the reasons

22   explained above, Plaintiffs have failed to show either that there is no genuine dispute of material

23   fact or that they are entitled to judgment as a matter of law on their section 2802 claim.

24

25   [5] At Mr. Uschold's deposition, he testified that he was unaware that any requests for mileage
     reimbursement or cell phone use reimbursement had been rejected.  (Dkt. No. 115-2 (March 2018
26   Uschold Decl.) p. 207.)  This, of course, contradicts other testimony from Mr. Uschold that CSI
27   refused to honor reimbursement requests for those types of expenses.

28   [6] CSI presented evidence it processed a number of expense requests from Mr. Uschold for other
     expenses.  (Dkt. No. 122 (Marquez Decl.) ¶ 15 and Exhibit B.)

1    Accordingly, Plaintiffs have not shown they are entitled to summary judgment on their section

2    17200 claim.  *See Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1126 (N.D. Cal. 2009).

3        Plaintiffs' motion for summary judgment is DENIED in its entirety.

4    **B.    Class Certification.**

5        **1.    Applicable Legal Standards.**

6        Class certification is governed by Federal Rule of Civil Procedure 23.  Under Rule 23(a), a

7    court may certify a class only if (i) the class is so numerous that joinder of all members is

8    impracticable, (ii) there are questions of law or fact common to the class, (iii) the claims or

9    defenses of the representative parties are typical of the claims or defenses of the class, and (iv) the

10   representative parties will fairly and adequately protect the interests of the class.

11       Under Rule 23(b), a class action may be maintained if Rule 23(a) is satisfied *and* if: (i)

12   separate actions by or against individual class members would risk: (a) inconsistent results with

13   respect to individual class members that would impose inconsistent requirements on the defendant,

14   or (b) results for individual class members dispositive of other members' interests or which would

15   substantially impair or impede class members' ability to protect their interests; (ii) the party

16   opposing the class has acted on grounds that apply generally to the class, so that declaratory relief

17   is appropriate; or (iii) the court finds that the questions of law or fact common to class members

18   predominate over any questions affecting only individual members and that a class action is

19   superior to other available methods for fairly and efficiently adjudicating the controversy.

20       A party seeking to certify a class must "affirmatively demonstrate" compliance with Rule

21   23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).  A court

22   must conduct a "rigorous analysis" of the Rule 23 factors, which necessarily entails "some overlap

23   with the merits of the plaintiff's underlying claim."  *Id.* at 351.  However, a court may consider

24   merits questions only to the extent such questions are relevant to determining whether the moving

25   party has met its burden to satisfy the Rule 23 prerequisites.  *Amgen Inc. v. Conn. Ret. Plans &*

26   *Tr. Funds*, 568 U.S. 455, 466 (2013).  The decision to grant or deny class certification is within

27   the trial court's discretion.  *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

28       As the moving parties, Plaintiffs bear the burden to show they meet each of Rule 23(a)'s

United States District Court
Northern District of California

1    requirements and that they meet at least one requirement under Rule 23(b).  *Lozano v. AT&T*

2    *Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007).

3          **2.     Ascertainability.**

4          As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party

5    seeking class certification must demonstrate that an identifiable and ascertainable class exists.

6    *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  While the identity of the class

7    members need not be known at the time of certification, a class definition must be sufficiently

8    definite so that it is administratively feasible to determine whether a particular person is a class

9    member.  *See, e.g.*, *Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995).

10          CSI poses many arguments concerning the proposed class definition.  Though CSI does

11   not characterize its arguments as such, CSI attacks the ascertainability of the class.  CSI maintains

12   that the class and subclass definitions are temporally overbroad, overbroad by referring to personal

13   "property," rather than to cell phones and vehicles, overbroad by including current as well as

14   former employees, and that the class definition uses undesirable "fail-safe" language.

15          First, CSI's position that the class definitions are temporally overbroad is based on the fact

16   that Plaintiffs' proposed class captures current and former sales employees employed by CSI

17   "within four years" of the filing of the complaint.  CSI contends this parameter runs afoul of

18   section 2802's three-year statute of limitations.  However, the unfair competition claim lengthens

19   the applicable statute of limitations to four years.  Courts in the Ninth Circuit have certified classes

20   for alleged violations of section 2802 and California unfair competition claims for four years pre-

21   dating the filing of the complaint.  *See, e.g.*, *Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 343

22   (N.D. Cal. 2018) (certifying class and subclasses for section 2802 claims for the class period

23   beginning four years prior to the filing of the complaint), *modified*, No. 17-cv-3026-YGR, 2018

24   WL 2197527 (N.D. Cal. May 14, 2018), *appeal dismissed*, No. 18-16045, 2019 WL 6607009 (9th

25   Cir. Oct. 31, 2019); *Lindell v. Synthes USA*, No. 11-cv-02053-LJO-BAM, 2014 WL 841738, at

26   *20 (E.D. Cal. Mar. 4, 2014) (same), *report and recommendation adopted*, No. 11-cv-02053-LJO,

27   2014 WL 1794467 (E.D. Cal. May 6, 2014).  As currently constituted, the proposed class and

28   subclass definitions are therefore not temporally overbroad.

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1    CSI's next objection to the breadth of the class definition argument is based on its

2    inclusion of both current and former employees.  CSI contends that former employees lack

3    standing to seek certain forms of relief for current employees.  CSI cites *Beal v. Lifetouch, Inc.*,

4    No. 10-cv-8454-JST-MLG, 2012 WL 3705171, at *3 (C.D. Cal. Aug. 27, 2012) to support its

5    point.  In *Beal*, the court noted that a former employee, the named plaintiff, did not have standing

6    to seek injunctive relief on behalf of current employees of the defendant company.  *Id.*  Here,

7    Plaintiffs seek only damages, not injunctive relief; therefore, *Beal* does not govern.  Plaintiffs'

8    proposed class is not overbroad in its inclusion of current and former employees.

9    CSI next contends that the class definition uses undesirable "fail safe" language.  A "fail

10   safe" class definition exists where the class is defined in a way that precludes membership unless

11   the defendant's liability is established: "When the class is so defined, once it is determined that a

12   person, who is a possible class member, cannot prevail against the defendant, that member drops

13   out of the class."  *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010).  In other

14   words, a fail-safe class requires resolution of a legal question in order to fill the class.  The Ninth

15   Circuit disfavors[7] fail safe classes because such class definitions "presuppose[] success on the

16   merits."  *E.g.*, *Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 606–07 (9th Cir. 2017) (concluding

17   district court did not abuse its discretion by certifying a class where "the liability standard applied

18   by the district court required class members to prove more facts to establish liability than are

19   referenced in the class definition.").

20   In *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008), the court struck a

21   "fail-safe" class definition.  There, the proposed class definition included California persons or

22   entities who purchased computer products the defendant "falsely advertised."  *Id.*  The court

23   reasoned this constituted an undesirable fail-safe definition because it required the court to reach a

24   legal determination as to whether the defendant "falsely advertised" products in order to determine

25   who should be a member of the class.  *Id.*  The court concluded the class, as proposed, could not

26

27   _____
[7] The Ninth Circuit has stopped short of *forbidding* certification of fail-safe classes.  *In re

28   AutoZone, Inc., Wage & Hour Emp't Practices Litig.*, 289 F.R.D. 526, 545–46 (N.D. Cal. 2012), *aff'd*, 789 F. App'x 9 (9th Cir. 2019).

1    be ascertained.  *Id.; see Dodd–Owens v. Kyphon, Inc.,* No. 06–cv-3988-JF, 2007 WL 420191, at

2    *3 (N.D. Cal. Feb. 5, 2007) (striking the words "who have experienced gender discrimination . . ."

3    from a class definition on the ground that it created a "fail-safe class").

4            Here, the proposed class definition is similarly problematic.  The proposed definition

5    requires the Court to determine whether the expenses incurred by class members are reasonable

6    and necessary under section 2802.  This improperly requires the Court to decide the merits of the

7    case in order to solidify class membership.  The class, as defined, is therefore insufficiently

8    ascertainable.  Ordinarily, the Court would alter the definition to address this deficiency, but given

9    Plaintiffs' failure to satisfy other requirements of Rule 23(a), the Court will refrain.

10           **3.      Numerosity.**

11           The numerosity requirement under Rule 23 is met when the number of potential plaintiffs

12   is so numerous it is impracticable to join each of them to the lawsuit.  Fed. R. Civ. P. 23(a)(1).

13   Plaintiffs need not state an exact number of class members to meet Rule 23's threshold

14   requirements.  The rule "requires examination of the specific facts of each case and imposes no

15   absolute limitations."  *Gen. Tel. Co. of the Nw. Inc. v. Equal Emp't Opportunity Comm'n*, 446

16   U.S. 318, 330 (1980).  A class or subclass with more than forty members "raises a presumption of

17   impracticability [of joinder] based on numbers alone."  *Hernandez v. Cnty. of Monterey*, 305

18   F.R.D. 132, 152–53 (N.D. Cal. 2015).  Courts have also certified smaller-sized classes.  *See*

19   *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (affirming district court certification of

20   twenty-member class).  In analyzing numerosity "a court may make common-sense assumptions

21   and reasonable inferences."  *Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, 15–cv–0224–

22   YGR, 2016 WL 314400, at *6 (N.D. Cal. 2016).  The failure to present evidence to show

23   numerosity precludes class certification.  *See Black Faculty Ass'n of Mesa Coll. v. San Diego*

24   *Cmty. College Dist.,* 664 F.2d 1153, 1157 (9th Cir. 1981) (denying certification where insufficient

25   evidence to support finding of numerosity or other Rule 23 requirements).

26           Plaintiffs contend they have shown CSI owns over thirty properties in California, that

27   several of those properties employ sales personnel expected to engage in "prospecting," and that

28   the number of persons falling within their proposed class definition is at least six hundred.  CSI

United States District Court
Northern District of California

18

argues that, because of the ascertainability issues discussed above, and because a related class action involving overlapping claims and putative class members has recently settled, Plaintiffs cannot satisfy the numerosity requirement.

It is unclear to the Court how the ascertainability problem discussed above will affect the number of class members. Nonetheless, the Court finds Plaintiffs have not satisfied the numerosity requirement.

In support of their numerosity argument, Plaintiffs cite to just two pieces of evidence—excerpts from Mr. Elliott's testimony—to support their contention that the proposed class is comprised of at least 600 people. Plaintiffs cite to his testimony that there were thirty-four or thirty-six CSI facilities in California and that, at one point or another, each of those facilities employed sales staff. (Dkt. No. 83-5 (Elliott Dep. Tr.) p. 30-35.) Plaintiffs suggest that Mr. Elliott testified that he believed CSI could have employed 800-1200 sales staff during "that time period," but Plaintiffs have neglected to include the cited-to page of Mr. Elliott's transcript in their supporting materials. If this particular information exists elsewhere in Plaintiffs' submission of evidence in support of its motion for class certification, Plaintiffs have not directed the Court to it, and the Court has not excavated it. *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) ("Judges are not like pigs, hunting for truffles buried in briefs." (citation omitted)).[8]

With the available information, the Court can infer that the number of CSI employees met an acceptable threshold to satisfy the numerosity requirement. But Plaintiff's testimony about their own experiences, without more, is not enough to allow the Court to infer that the number of CSI employees *who incurred reimbursable expenses and were not reimbursed* meets the numerosity threshold.[9] *See, e.g.*, *Siles v. ILGWU Nat. Ret. Fund,* 783 F.2d 923, 930 (9th Cir.

---

[8] By sheer happenstance, the Court unearthed deposition testimony from Mr. Elliott that there were approximately six hundred new hires at the Rolling Hills location from 2013 to 2017. (Dkt. No. 83-5 (Elliott Dep. Tr.) p. 241-42.) Mr. Elliott further testified that, at any given time, there were approximately 150 licensed sales staff working in California for CSI facilities. (*Id.*)

[9] Plaintiffs mischaracterize Mr. Elliott's testimony. (See Dkt. No. 83-5 (Elliot Dep. Tr.) p. 114-20.) Plaintiffs suggest Mr. Elliott testified that he was unaware of any reimbursements made to California sales employees for mileage or cell phone use and that CSI only began reimbursing sales staff after the initiation of this lawsuit. During this portion of the deposition, Mr. Elliott was

United States District Court
Northern District of California

1    1986) (affirming denial of certification of class consisting of members of plan who were denied

2    benefits where plaintiff presented no evidence as to how many of the 31,000 plan members were

3    denied benefits in circumstances similar to the plaintiff); *Diacakis v. Comcast Corp.*, No. 11-cv-

4    3002-SBA, 2013 WL 1878921, at *5 (N.D. Cal. May 3, 2013) (finding numerosity requirement

5    not met where plaintiffs did not present evidence as to how many of 649,576 cable subscribers

6    were, like named plaintiffs allegedly misled regarding fees).  In other words, Plaintiffs have not

7    presented sufficient materials to suggest that their experience at CSI was not unique to them.  The

8    Plaintiffs have given the Court no evidence from which to make "common-sense assumptions and

9    reasonable inferences."  *See Civil Rights Educ.*, 2016 WL 314400, at *6.[10]  Accordingly, Plaintiffs

10   have not demonstrated they satisfy Rule 23's numerosity requirement.

11       **4.    Commonality.**

12       The commonality requirement under Rule 23 is satisfied if "there are questions of law or

13   fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The party seeking class certification can

14   establish commonality by showing their claims are based on a common question capable of class-

15   wide resolution.  *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014)

16   (citations omitted).  A common contention need not be one answered in favor of the class; the

17   question must only be capable of classwide resolution.  *Id.* (citation omitted).  Moreover, it is not

18   necessary for all questions of fact and law to be common in order to satisfy Rule 23.  *Rodriguez v.*

19   *Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).  The purpose of the commonality requirement is (i) to

20   ensure that missing putative class members are fairly and adequately represented and (ii) to

21

22   _____

23   testifying specifically about one California facility, not all California facilities.  Moreover, he
     testified that, after the lawsuit was initiated, he *became aware* that stipends for cell phone use were
24   being paid to CSI employees.

25   [10] CSI argues that the settlement of a separate, state court class action, *Faria v. Carriage Funeral*
     *Holdings, Inc*., reduces the size and decreases the viability of the class.  (*See* Dkt. No. 70.)   Yet,
26   this class action, while also implicating violations of California Labor Law, involves a different
     defendant than the one at issue here.  Further, while *Faria* may involve overlapping claims and
27   implicate some of the same putative class members, CSI does not satisfactorily explain how the
     settlement of this separate case would affect the proposed class at issue in this case.
28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    facilitate practical and efficient case management.  *Id.*  For commonality, what matters is "the

2    capacity of a classwide proceeding to generate common answers apt to drive the resolution of the

3    litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation omitted).

4         Here, resolution of the putative class's section 2802 claim cannot be resolved by common

5    proof.  First, determinations of whether expenses were "necessary" will vary within the putative

6    class, as "necessity" depends on reasonableness under the circumstances.  *Grissom*, 1 Cal. App.

7    4th at 58 (reasonableness of expenditure "must turn on its own facts.").  Plaintiffs' evidence shows

8    only that sales employees were required to "prospect" and that "prospecting" entailed reaching out

9    to the consuming public over the phone and in person.

10        The proposed class would include sales staff from nearly three dozen locations in

11   California.  Whether using personal vehicles and cell phones was necessary under section 2802

12   depends on a variety of factors specific to the physical set up of each office—for example, the

13   ratio of sales employees to landlines and the availability of company vehicles for offsites.  *See*

14   *Dugan v. Ashley Furniture Indus., Inc.*, No. 16-cv-1125-PAF-FM, 2016 WL 9173459, at *4 (C.D.

15   Cal. Nov. 29, 2016 (concluding no commonality where "necessity" of using personal cell phones

16   to make business calls varied salesperson to salesperson and office to office).  Individual Plaintiffs

17   also espoused different reasons for using their cell phones over landlines.  For instance, Ms.

18   Naples testified that she used her cell phone because she deferred landline use to individuals who

19   did not own cell phones, while Mr. Almendarez testified that he used his personal cell phone

20   because the landline system was unreliable.  The former suggests convenience rather than

21   necessity, while the latter more closely approximates necessity.  *See id.* (salesperson's motivation

22   in incurring expense key to determination of necessity).  Here, the necessity of the incurred

23   expenses is not a common question—even among Plaintiffs.

24        The act of reimbursement itself is also not a question resolvable by common proof.

25   Plaintiffs suggest there was a policy of not reimbursing employees for these types of expenses, but

26   Plaintiffs have not submitted sufficient evidence[11] of CSI's purported (informal) policy of non-

27

28   ─────────────────────────
     [11] Plaintiffs have submitted only their own testimony.

1    reimbursement.  In fact, Plaintiffs' only evidence is their own testimony that they themselves were

2    not reimbursed.  This is not enough.  *See Wilson v. Kiewit Pac. Co.*, No. 09-cv-03630-SI, 2010

3    WL 5059522, at *5 (N.D. Cal. Dec. 6, 2010) ("[E]vidence of one instance of an employee being

4    informed that the Southern district did not reimburse employees for business travel mileage in

5    personal vehicles is not sufficient to demonstrate a widespread practice that supports class

6    certification.").

7          Indeed, CSI's company policy was to reimburse employees for such expenses.  This policy

8    is spelled out in its employee handbook, and CSI reimbursement forms include separate sections

9    for reimbursement to itemize cell phone and vehicle expenses.  A reimbursement policy weighs

10   against certification for a section 2802 claim—especially where the plaintiffs have not introduced

11   significant evidence the employer violated its own policy.  *AutoZone*, 289 F.R.D. at 546–47.  In

12   such circumstances, in order to adjudicate reimbursement claims, the Court would need to

13   examine not only each class member's expenses, but also whether the class members submitted

14   reimbursement requests to CSI and whether CSI completed the requested reimbursements.  *See*

15   *Chavez v. Lumber Liquidators, Inc.*, No. 09-cv-4812-SC, 2012 WL 1004850, at *9–10 (N.D. Cal.

16   Mar. 26, 2012) ( "[T]o assess merits of Plaintiffs' reimbursement claim [under section 2802], the

17   Court would need to scrutinize each class member's claimed expenses.").

18         The Court will have to rely on individualized proof to determine whether class members

19   are owed reimbursements.  Accordingly, Plaintiffs' proposed common questions cannot be

20   resolved "in one stroke," and commonality cannot be premised upon them.  *See Dugan*, 2016 WL

21   9173459, at *4.

22         **5.      Typicality.**

23         Rule 23 next requires showing that "the claims or defenses of the representative parties are

24   typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality

25   requirement tests whether other members have an injury similar to that of the named plaintiffs and

26   whether other class members "have been injured by the same course of conduct."  *Hanon v.*

27   *Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).  The purpose of this requirement is to

28   assure that the named plaintiffs' interests align with the interests of the putative class members.

United States District Court
Northern District of California

22

*Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010).  Under this

"permissive" standard, representative claims are "typical" if they are "reasonably coextensive with

those of absent class members."  *Sandoval v. M1 Auto Collisions Cntrs.*, 309 F.R.D. 549, 568–69

(N.D. Cal. 2015) (citation omitted).

       Plaintiffs have testified that they incurred cell phone and personal vehicle expenses in the

course of performing work for CSI that CSI did not reimburse.  Plaintiffs have alleged that other

employees incurred similar expenses and were not reimbursed; Plaintiffs have therefore shown

that the nature of their injuries are reasonably co-extensive with the injuries purportedly suffered

by the putative class.[12]  *See Ellis*, 657 F.3d at 981.  Plaintiffs have satisfied the typicality

requirement.

      **6.**    **Adequacy.**

       Finally, Rule 23(a)(4) requires a showing that the named Plaintiffs and counsel will fairly

and adequately protect the interests of the class.  Adequacy may be satisfied by establishing (i)

that the named plaintiffs and their counsel have no conflicts of interest with other class members

and (ii) that the named plaintiffs and their counsel will "act vigorously" on behalf of the class.

*Senne v. Kan. City Royals Baseball Corp.*, 315 F.R.D. 523, 569-70 (N.D. Cal. 2016) (citations and

internal questions omitted).  The adequacy requirement for class representatives is satisfied as long

as one of the named class representatives is adequate.  *Rodriguez v. W. Publ'g Corp.,* 563 F.3d

948, 961 (9th Cir. 2009).

       To determine class counsel's adequacy, courts must consider the work counsel have done

in the action, their experience in similar actions, their knowledge of applicable law, and the

resources they are able to commit.  Fed. R. Civ. P. 23(g).  Courts may also consider "any other

---

[12] That a named plaintiff is situated hierarchically or categorically differently from unnamed class members does not necessarily destroy typicality.  *See, e.g.*, *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003) (finding typicality satisfied despite named plaintiffs' not representing each type of job category in class); *Trosper v. Styker Corp.*, No. 13-cv-0607-LHK, 2014 WL 4145448, at *11 (N.D. Cal. Aug. 21, 2014) (holding that, regardless of named plaintiffs' individual arrangements, he allegedly incurred expenses for which he was not reimbursed, raised class claims alleging the same, and therefore satisfied the typicality requirement).  In this case, the Plaintiffs' sometime-status as managers does not make their claims "atypical."  *See id.*, at 984 (typicality turns on nature of claims or defenses, not facts from which they arise).

United States District Court
Northern District of California

matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," including counsel's "reputation built upon past practice" and "counsel's competence displayed by present performance." *Abikar v. Bristol Bay Native Corp.*, No. 17-cv-1036, 2018 WL 6738017, at *13 (S.D. Cal. Dec. 21, 2018). Here, counsel for Plaintiffs has not demonstrated he will provide adequate representation to the class.

First, the Court strikes the portion of Plaintiffs' brief that falls outside of the page limit. As this unpermitted extra briefing contains Plaintiffs' entire adequacy argument, Plaintiff's entire adequacy argument is stricken. That Plaintiffs' whole argument concerning adequacy falls entirely outside the permissible page limit crystallizes, in many ways, the Court's concerns about the qualities of counsel's representation. Before this Court, Plaintiffs's counsel have demonstrated an unsettling complacence with imprecision. Such an approach is unsuited to the demands of complex civil litigation—particularly a case where counsel could come to represent the interests of dozens, even hundreds, of individuals who will not be directly involved in overseeing the strategy and progress of the case. *See Lou v. Ma Labs., Inc.*, No. 12-cv-05409-WHA, 2014 WL 68605, at *2 (N.D. Cal. Jan. 8, 2014) ("Class counsel wield great power. . . . At best, absent class members' interests can be vindicated. At worst, litigation and settlement decisions can result in preclusion, collusion, and exclusion.").

The record is replete with dereliction. In support of Plaintiffs' motion for summary judgment alone, counsel submitted exhibits without key components (court reporter certificates for deposition transcript excerpts, key pages to exhibits, verification pages to discovery responses, etc.). Exhibits submitted in support of its motion for class certification were also disheveled. (*See* Dkt. 127-1 (Declaration of Alyssa Villanueva) and exhibits.) In addition, and far more seriously, counsel has missed multiple filing deadlines, stipulated and Court-ordered, and missed several discovery deadlines. (Dkt. Nos. 13, 14, 16, 21, 22, 26, 44, 62.) The Court has sanctioned Mr. Benjamin for failure to appear at a case management conference, in violation of this Court's standing order. (Dkt. No. 48.) Counsel's standing explanations for these lapses were inadequate

United States District Court
Northern District of California

staffing, scheduling conflicts, and miscellaneous technical difficulties.[13]  (*E.g.*, Dkt. No. 22.)

These mistakes were not without impact.  The filing deadlines counsel missed were deadlines to file an amended complaint and to respond to CSI's motion to dismiss; either misstep could have resulted in the dismissal of Plaintiffs' entire case.  Counsel's failure to comply with discovery deadlines resulted in Plaintiffs' waiver of substantive objections to CSI's discovery responses—including attorney-client privilege.  (*See* Dkt. No. 62.)  And counsel's behavior has also been problematic.  Magistrate Judge Laporte ruled that Mr. Benjamin's conduct at deposition violated the Court's Deposition Guidelines and the Northern District's Guidelines for Professional Conduct and sanctioned Mr. Benjamin.  (*See id.*; Dkt. No. 97.)  Concerningly, it appears that counsel's practice habits are not unique to this case.[14]  In other cases, Mr. Benjamin has been sanctioned for missing deadlines and for uncooperative behavior during discovery.  In some of these cases, Mr. Benjamin's missing discovery deadlines has resulted in waivers of his client's objections.[15]  (*See* Dkt. No. 118, 118-3—118-14.)

Mr. Benjamin suggests on reply that these matters in other cases remain contested and that they should not factor into the Court's adequacy analysis.  He also maintains that he has engaged in many cases without sanctions or discovery problems and that he has handled numerous cases successfully for an array of clients.  That all may be so, but it does not negate the Court's concerns with the way in which Mr. Benjamin has represented Plaintiffs in *this* lawsuit.

---

[13] Mr. Benjamin's explanations for missing deadlines strongly suggest Mr. Benjamin does not have the availability and resources to continue to manage this case.  *See* Fed. R. Civ. P. 23(g) (noting counsel's available resources a factor in adequacy consideration).

[14] The Court is not satisfied by counsel's insistence that attorneys who no longer work at Benjamin Law Group, P.C., are to blame for the missteps discussed here.  The docket makes evident that Mr. Benjamin has been heavily involved in the case since its inception.

[15] The Court has already taken judicial notice of Ms. Naples's plea agreement and the judgment in her criminal case.  The Court now takes judicial notice of twelve orders regarding Mr. Benjamin's behavior issued in other cases.  (*See* Dkt. Nos. 118-3—118-14).  These documents meet the criteria for judicial notice in that they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201(b)(2); *see also Aniel v. TD Serv. Co.*, No. 10–cv–05323-WHA, 2011 WL 109550, *3 (N.D. Cal. Jan.13, 2011) (taking judicial notice of court orders).

Any one, or perhaps even two, of the incidents described above would not be particularly noteworthy. Yet, taken together, these events paint a picture of disarray. Counsel's behavior has more than exhausted the Court's patience, and, more importantly, has given the Court grave concerns regarding counsel's ability to protect the rights of Plaintiffs and other absent class members—a critical consideration when weighing adequacy of representation. *See Lou*, 2014 WL 68605, at *2 ("Strategic decisions made by counsel to litigate and/or settle class claims have profound implications on the rights of absent class members."). "Cases are sometimes lost for reasons other than the merits, such as the late filing of crucial documents, sanctions, or failure to prosecute." *Diaz v. Target Corp.*, No. 10-cv-1103-AG-MLG, 2010 WL 11558085, at *7–9 (C.D. Cal. Dec. 13, 2010) (concluding class counsel inadequate where he missed deadlines, failed to follow court rules, and submitted inappropriate exhibits to filings). Here, class counsel is adequate.[16]

The Court turns now to the adequacy of the four class representatives. With respect to Ms. Naples, the Court agrees with CSI that credibility is a relevant consideration regarding her adequacy as a representative, as "an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 996, 1015 (N.D. Cal. 2010) (citation omitted). Credibility problems give rise to representative inadequacy "where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as criminal conviction for fraud." *Senne*, 315 F.R.D. at 570.

As discussed above, in 2016, Ms. Naples plead guilty to submitting false tax returns, a

---

[16] CSI argues that counsel has a conflict of interest, due to his representation of another group of plaintiffs against CSI in a separate lawsuit, *Barajas v. Carriage Services, Inc.*, No. 19-cv-2035. The Court disagrees. Counsel will "not necessarily be disqualified merely for representing another class against the same defendants." *Sandoval*, 309 F.R.D. at 569. When determining whether a true conflict of interest exists, or whether circumstances give the appearance of a conflict of interest, courts look to the particular circumstances of the representation. For example, courts examine whether the purported conflicts are speculative, whether the class has co-counsel uninvolved in the other case or otherwise affected by the conflict, and whether adequate procedural safeguards protect the class's interests. Here, without more, the Court cannot definitively say whether counsel has a true conflict of interest. For the reasons, explained above, however, such analysis is moot.

crime of dishonesty.  But she also, under penalty of perjury, failed to disclose this prior conviction.  (Dkt. No. 117-21 (Naples Employment Application); Dkt. No. 117-3 and -5 (Naples Response to Interrogatory No. 12); Dkt. No. 117-5 (December 2018 Naples Dep.) p. 133-34.)  The crime was recent, overlapping with the facts giving rise to this case, and was a crime that involved making false statements.  Due to these acute credibility concerns, Ms. Naples is not an adequate class representative.

With respect to the rest of the Plaintiffs, CSI contends Plaintiffs are inadequate representatives for a number of reasons.  First, CSI argues that Mr. Almendarez, Mr. Saechao, and Mr. Uschold also have credibility issues due to misstatements each has made during this litigation.  (See Dkt. No. 117-1 (Declaration of Andrew Chang) ¶ 23 and exhibits.)  Some of these representations patently are not "directly relevant" to the litigation.  Mr. Almendarez and Mr. Uschold's exaggeration about their credentials when applying for a job at CSI or misstatements concerning additional employment they had while working at CSI have no bearing on whether they incurred unreimbursed expenses.

Other inconsistent statements creep closer to "direct relevance."  For instance, Mr. Saechao originally testified that he made 100 calls a day on his cell phone, but when asked about phone records from a particular month, Mr. Saechao admitted he made an average of *two* business calls on his cell phone per day.[17]  As another example, Mr. Almendarez and Mr. Uschold both testified they were unaware of reimbursement forms, and then they each changed their testimony and stated they *were* aware of these forms.  While variation in testimony is fair game for cross-examination, inconsistency does not always warrant a determination of inadequacy.  *Corcoran v. CVS Health*, No. 15-cv-03504-YGR, 2019 WL 6250972, at *5 (N.D. Cal. Nov. 22, 2019); *see Lee v. Pep Boys-Manny Moe & Jack of Cal.*, No. 12-cv-05064-JSC, 2015 WL 9480475, at *10 (N.D. Cal. Dec. 23, 2015) (holding named plaintiff's inconsistent testimony about company practices and policies did not constitute severe credibility challenge).  As the Court has observed elsewhere in this Order, witness credibility is particularly important in this case—discovery is closed, and Planitiffs'

---

[17] This testimony is not as damning as CSI claims: the testimony in question concerns one month—not the span of Mr. Saechao's employment.

United States District Court
Northern District of California

1   primary evidence is their own testimony.  Even so, the inconsistencies CSI identified are not

2   sufficiently acute to disqualify the remaining named Plaintiffs.

3        CSI next argues that Plaintiffs cannot be adequate class representatives because they were

4   competing for CSI resources with other classes of employees.  CSI suggests that this competition

5   provides an incentive to Plaintiffs to exaggerate the degree to which these other classes of

6   employees had access to CSI company resources, therefore minimizing any reimbursements these

7   other classes of employees might ultimately be awarded.  The Court is not persuaded that this

8   purported tension rises to a disqualifying conflict of interest.  The Court is also not persuaded that

9   Mr. Almendarez and Mr. Uschold's new business venture, a CSI competitor, disqualifies either

10  Plaintiff.  The fact that these two Plaintiffs wish to compete with their former employer may tend

11  to show bias, but it is not relevant for class certification.

12       CSI also argues that Plaintiffs' supervisory roles create a conflict of interest with non-

13  supervisory employees in the putative class.  Yet, courts in the Ninth Circuit have held that a

14  plaintiff's status as a supervisor, where other unnamed class members are not supervisors, does

15  not disqualify the plaintiff as a class representative.  *E.g., Diaz*, 2010 WL 11558085, at *7; *Senne*,

16  315 F.R.D. at 569 (named plaintiff's position as supervisor did not create sufficient conflict of

17  interest to negate adequacy).  Here, for the failure to reimburse claim (and the derivative unfair

18  competition claim), there is no difference between a supervisor's interests and the interests of sales

19  staff.  Supervisors and staff both have an interest in being reimbursed.

20       In sum, Plaintiffs have partially satisfied their required showing for adequacy—three

21  Plaintiffs are adequate class representatives, but counsel is not adequate.

22       With respect to the other requirements of Rule 23(a), Plaintiffs have only successfully

23  shown typicality.  Plaintiffs have therefore failed to satisfy Rule 23(a).  Plaintiffs have cited no

24  evidence and marshaled no argument as to whether the two proposed sub-classes meet any of the

25  Rule 23 requirements.  *See Betts v. Reliable Collection Agency, Ltd.,* 659 F.2d 1000, 1005 (9th

26  Cir. 1981) (each subclass "must independently meet the requirements of Rule 23 for the

27  maintenance of a class action.").  Accordingly, Plaintiffs have failed to make the required showing

28  as to the sub-classes as well.

Because Plaintiffs have not satisfied Rule 23(a), the Court declines to address the parties' arguments concerning predominance under Rule 23(b).   The Court therefore denies Plaintiffs' motion for class certification.

**CONCLUSION**

For the reasons explained above, the Court DENIES Plaintiffs' motion for summary judgment and DENIES Plaintiffs' motion for class certification.  Counsel for plaintiffs is HEREBY ORDERED to serve a copy of this Order on the named Plaintiffs no later than March 20, 2020.  The parties are HEREBY ORDERED, no later than March 20, 2020, to meet and confer and submit a joint statement proposing pre-trial and trial deadlines.  The joint statement should contain a statement from Plaintiff's counsel that service of this Order on the named Plaintiffs has been completed.

**IT IS SO ORDERED.**

Dated: March 6, 2020

_____
JEFFREY S. WHITE
United States District Judge